IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JOSEFINA I. ALMANZA, Special Administrator of the ESTATE OF GRACIELA MARTINEZ, <br><br>   Plaintiff, <br><br> vs. <br><br> THE UNITED STATES OF AMERICA, <br><br>   Defendant. | CIVIL CASE NO. _____ <br><br><br><br> **COMPLAINT** |

Josefina I. Almanza, Special Administrator of the Estate of Graciela Martinez, by her attorney, Patrick L. Woodward, of McDonald, Woodward & Carlson, P.C., for her Complaint states:

**PARTIES**

1. Josefina I. Almanza (hereinafter "Josefina") is the duly appointed Special Administrator of the Estate of Graciela Martinez, In the Circuit Court of the Fourteenth Judicial Circuit, Rock Island County, Illinois, General Division, Case No. 17P261. The Order Appointing Josefina as Special Administrator is attached as Exhibit A and incorporated herein.

2. The defendant is the United States of America on behalf of the U.S. Department of Health & Human Services.

**JURISDICTION**

3. This case arises from the death of the unborn baby of Josefina and Oscar Martinez, Graciela Martinez, while under the care and treatment of John Leno, M.D. and Community Health Care, Inc. between January 21, 2016, and January 23, 2016, in Rock Island County, Illinois.

4. For all times relevant hereto, the U.S. Department of Health & Human Services (hereinafter "HHS") has determined that Community Health Care, Inc. (hereinafter "CHC") was a federally funded community health center and that John Leno, M.D. (hereinafter "Leno") was an employee of CHC operating within the scope of his employment, and the U.S. Attorney for the Central District of Illinois has certified the same. See letter of November 8, 2017, from Patrick D. Hansen, Acting U.S. Attorney, to Patrick L. Woodward attached as Exhibit B and incorporated herein.

5. This action is, therefore, brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1331 and 2671.

6. On August 24, 2017, Josefina's administrative tort claim was filed with HHS, the Office of General Counsel/General Law Division Claim Office, Claim No. 2017-0560. More than 6 months have elapsed since the filing of the same, and pursuant to 28 U.S.C. §2675(c), the claim is deemed finally denied.

7. Plaintiff has exhausted her administrative remedy under 28 U.S.C. §2675(c).

## VENUE

8. Venue properly lies in the United States District Court, Central District of Illinois, pursuant to 28 U.S.C. §1391(e)(i)(B) and (C) as the events or omissions giving rise to this matter occurred in, and plaintiff, Special Administrator of the Estate of Graciela Martinez, is appointed in Rock Island County, Illinois.

## FACTS COMMON TO ALL COUNTS

9. For all times, Josefina was, and continues to be, an adult resident of Rock Island County, Illinois, and is the mother of Graciela Martinez, deceased (hereinafter "Graciela").

10. For all times relevant hereto, Oscar Martinez (hereinafter "Oscar") was and continues to be an adult resident of Rock Island County, Illinois, and is the father of Graciela.

11. Selena Casteneda (hereinafter "Selena") is the minor daughter of Josefina and the sister of Graciela.

12. Horacio Casteneda, Jr. (hereinafter "Horacio") is the minor son of Josefina and brother of Graciela.

13. Rolando Almanza (hereinafter "Rolando") is the minor son of Josefina and brother of Graciela.

14. Isabella Almanza (hereinafter "Isabella") is the minor daughter of Josefina and sister of Graciela.

15. In 2015 and January 2016, defendant John Leno (hereinafter "Leno") was and continues to be duly licensed to practice medicine in the State of Illinois and was engaged in the practice of medicine.

16. Throughout 2015 and January 2016 Leno held himself out to the public, including Josefina, as practicing medicine in the area of obstetrics and specializing in high risk obstetrics.

17. Community Health Care, Inc. (hereinafter "CHC") is an Iowa not-for-profit corporation authorized to do business in the State of Illinois and in 2015 and January 2016 provided patient care through its primary care and specialist physicians.

18. In 2015 and January 2016, Leno was an employee of CHC and the apparent agent of CHC.

19. In 2015 and January 2016, Leno was acting within the scope of his agency and employment with CHC.

20. At no time was Josefina informed that Leno was not the employee or agent of CHC.

21. At no time did Josefina know, or should have known, that Leno was not an agent or employee of CHC.

22. On January 21-23, 2016, Josefina reasonably relied upon defendant Leno to provide her and Graciela with complete obstetric care, including the live birth of Graciela.

23. On January 21-23, 2016, Josefina reasonably relied upon CHC to provide her and Graciela with complete obstetric care, including the live birth of Graciela.

24. In June 2015, Josefina learned she was pregnant with Oscar's baby, Graciela.

25. In late August or early September 2015, Josefina's primary care physician determined that Josefina's pregnancy required specialized obstetrics care and referred Josefina to Leno, and CHC.

26. Leno, and CHC accepted Josefina as a patient and agreed to provide Josefina's prenatal care and delivery of Graciela.

27. Throughout the remainder of 2015, Josefina saw Leno at CHC's Moline, Illinois office on a regular basis for care and treatment of both herself and Graciela.

28. Beginning in late 2015, Leno began seeing Josefina on a weekly basis at CHC's Moline, Illinois office.

29. On December 11, 2015, an ultrasound study revealed a large for gestational age fetus.

30. On the morning of January 21, 2016, Josefina saw Leno at CHC in Moline, Illinois.

31. On the morning of January 21, 2016, Leno found that Josefina was at 38 weeks gestation, had gained 6 pounds of weight over the past week, had blood pressure of 161/91, low hemoglobin and hematocrit levels, elevated protein levels, and based on this, knew or should have known Josefina was suffering from preeclampsia.

32. At or about 9:00 a.m. on January 21, 2016, Leno instructed Josefina to drive herself directly from his office at CHC to the Emergency Department at Trinity Medical Center-Moline, Illinois.

33. At or about 9:30 a.m. on January 21, 2016, as instructed, Josefina presented to the Trinity Emergency Department.

34. At approximately 10:00 a.m., James Stubbs, M.D. (hereinafter "Stubbs") signed orders admitting Josefina to Trinity.

35. Neither Stubbs, Leno, nor any other medical doctor examined Josefina or Graciela at the time Josefina presented to Trinity on the morning of January 21, 2016.

36. At no time on January 21, 2016, after admission to Trinity did any medical doctor, including Leno, examine Josefina or Graciela.

37. Despite requiring insulin, insulin was not given to Josefina until the evening of January 21, 2016.

38. The only recorded blood pressure monitoring of Josefina on January 21, 2016, while at Trinity were as follows: At 9:39 a.m., 176/81; at 9:47 a.m., 168/84; at 10:10 a.m., 168/84; at 10:32 a.m., 150/67; at 10:47 a.m. 138/65; at 12:15 p.m., 151/83; at 3:00 p.m., 137/71; at 7:15 p.m., 154/74; and, at 11:00 p.m., 141/79.

39. On January 22, 2016, neither Leno nor any other medical doctor examined Josefina or Graciela.

40. On January 22, 2016, no doctor saw Josefina until Leno spoke with her at bedside at approximately 9:30 p.m. when he advised Josefina he was scheduling her for a caesarean section the following day, January 23, 2016.

41. Josefina's blood pressure readings recorded on January 22, 2016, were: at 3:18 a.m., 169/86; at 4:20 a.m., 152/76; at 8:29 a.m., 154/83; at 12:12 p.m., 170/93; at 3:30 p.m., 165/86; at 7:00 p.m., 162/88; at 10:50 p.m., 148/92.

42. At no time on January 21, 2016, or January 22, 2016, was continuous external fetal monitoring ordered or performed despite the existence of known risk factors.

43. Shortly after midnight on January 23, 2016, nurses from Trinity attempted to place a fetal monitor on Graciela, but were unable to locate any fetal activity.

44. Thereafter, an ultrasound confirmed that Graciela was no longer viable.

45. On the morning of January 23, 2016, Leno performed a transverse caesarean section on Josefina and delivered Graciela, who was stillborn.

46. Autopsy findings confirmed Graciela died from complications of preeclampsia, including, but not limited to, thrombosis of the umbilical cord, placenta ischemic changes, and decidual vasculopathy.

## COUNT I
## JOHN LENO, M.D. – MEDICAL NEGLIGENCE – WRONGFUL DEATH

47. Plaintiff repleads paragraphs 1 through 46 as if fully set forth herein.

48. For all times relevant hereto, Leno had a duty to possess and use the knowledge, skill, and care ordinarily used by a reasonably careful obstetrician under the same or similar circumstances.

49. Between January 21, 2016, and January 23, 2016, Leno was professionally negligent in the following ways:

    a. Failed to monitor Josefina and Graciela's condition after admission to Trinity on January 21, 2016;

    b. Failed to promptly diagnose fetal distress and deliver in a timely manner;

6

      c.      Failed to provide proper care and treatment for Josefina's preeclampsia;

      d.      Failed to call for and timely perform a caesarean section on January 22, 2016;

      e.      In abandoning care and treatment of Josefina from 9:00 a.m. on January 21, 2016, until the late evening of January 22, 2016.

50.    As a direct and proximate result of the negligent acts of Leno, Graciela died and through her Special Administrator, Josefina I. Almanza, Josefina, Oscar, Selena, Horacio, Rolando, and Isabella are entitled to pecuniary damages, including damages for grief, sorrow, and mental suffering.

51.    Attached to this Complaint as Exhibit C is the First Affidavit of one of plaintiff's attorneys, and the written physician's report required by 735 ILCS 5/2-622.

WHEREFORE, Josefina I. Almanza, Special Administrator of the Estate of Graciela Martinez, demands judgment against the United States of America in the amount of $4,000,000.00 to fully compensate the Estate for its losses, costs and interest as allowed by law.

## COUNT II
## COMMUNITY HEALTH CARE, INC. – RESPONDEAT SUPERIOR – LENO

52.    Plaintiff repleads paragraphs 1 through 51 as if fully set forth herein.

53.    For all times relevant hereto, John Leno, M.D. was employed by, was an agent of, or was an employee of defendant CHC.

54.    That the above described acts and omissions of John Leno, M.D. were committed within the scope of his employment with CHC.

55.    That as the employer of John Leno, M.D., CHC is responsible for all of the negligent acts and omissions committed by Leno in the scope of his employment and the damages caused thereby.

WHEREFORE, plaintiff Josefina I. Almanza, as Special Administrator of the Estate of Graciela Martinez, demands judgment against the United States of America in the amount of $4,000,000.00 to fully compensate the Estate for its losses, costs and interest as allowed by law.

McDONALD, WOODWARD & CARLSON, P.C.


By___/s/ Patrick L. Woodward_____
   Patrick L. Woodward  (6305291)

3432 Jersey Ridge Road
Davenport, IA 52807
Telephone:  563/355-6478
Facsimile:  563/355-1354
Email:  pwoodward@mwilawyers.com

ATTORNEYS FOR PLAINTIFF